IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETS GLOBAL, INC., | : | Civil No. 1:18-CV-01256 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| M2 LOGISTICS, INC. and | : | |
| HABIL TRANSPORTATION LLC, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is Plaintiff Pets Global, Inc.'s ("Pets Global") motion for

summary judgment against Defendant Habil Transportation LLC ("Habil"). (Doc.

49.)  The court holds that Pets Global has proven a prima facia case under the

Carmack Amendment, and Habil has not provided any evidence to rebut its

liability.  Thus, for the reasons that follow, the court will grant Pets Global's

motion for summary judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

In December 2017, Pets Global, the shipper and owner of 40,700 pounds of

pet food product, shipped said pet food under bill of lading number 5115895

(hereinafter described as "the cargo").  (Doc. 50, ¶ 1.)  M2 Logistics, Inc. ("M2

---

[1] In considering Pets Global's motion for summary judgment, the court relied on the uncontested facts, or where the fact were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to Habil as the nonmoving party in accordance with the relevant standard for deciding a motion for summary judgment.  *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

Logistics"), identified as the carrier on the bill of lading, agreed to deliver the

cargo from Pets Global in Brainerd, Minnesota, to Pet Food Experts, Inc. ("Pet

Food Experts") in Denver, Pennsylvania.  (*Id.* ¶ 3; Doc. 54-2, p. 2.)[2]  M2 Logistics

then contracted with Habil to physically pick up, carry, and deliver the cargo.[3]

(Doc. 50, ¶ 3; Doc. 53, ¶ 3; Doc. 54-2, p. 2; Doc. 54-3, p. 2.)  The bill of lading

indicates that at the time of pickup, the described property was "received in good

order except as noted," and no notations were made to indicate that any property

was not in good order.  (Doc. 13-1.)

While transporting the cargo, Habil's tractor trailer was involved in an

accident near Harrisburg, Pennsylvania, on December 22, 2017.  (Doc. 50, ¶ 6.)

The police crash report prepared by the Pennsylvania State Police indicates that the

accident occurred at 2:49 a.m. on December 22, 2017, on State Route 283 East.

(Doc. 55-1, p. 1, 5.)  There were no adverse weather conditions, the road surface

was dry, and only one vehicle was involved in the accident.  (*Id.*)  The report

provides that the tractor trailer was "driving too fast for conditions," which caused

the tractor trailer to "overturn/roll over."  (*Id.* at 1–2.)  The driver of the tractor

trailer was cited for violating Title 75, section 3361 of the Pennsylvania Code,

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[3] Habil is a motor carrier based in the United States.  (Doc. 50, ¶ 2.)

titled "Driving vehicle at safe speed." (*Id.* at 2, 7–8, 10.)  The traffic citation accompanying the police crash report lists the nature of the offense as "driv[ing] vehicle at a speed greater than was reasonable/prudent under conditions."  (*Id.* at 10.)  Due to the accident, the cargo was never delivered to Pet Food Experts. (Doc. 50, ¶ 5; Doc. 53, ¶ 5.)

Pets Global was shipping the cargo based on a contract to sell the cargo to Pet Food Experts for $56,106.02.  (Doc. 50, ¶ 11.)  Because the cargo was not delivered, Pet Food Experts never paid Pets Global for the cargo.  (*Id.* ¶ 12.)

Habil admits that Pets Global was not involved in the accident.  (Doc. 50, ¶ 14; Doc. 53; ¶ 14.)  However, Habil asserts that it promptly notified its insurance carrier and M2 Logistics of the accident, as well as the location and condition of the cargo.[4]  (Doc. 53, ¶ 13.)  Habil states that the cargo was towed to a warehouse following the accident.  (Doc. 35, ¶ 14.)  It is Habil's contention that the cargo could have been salvaged and delivered if assessed and approved by M2 Logistics. (Doc. 53, ¶¶ 13–14.)

This action was initiated via complaint on June 21, 2018, and is proceeding on the basis of an amended complaint filed on August 2, 2018.  (Docs. 1, 13.)  The

---

[4] The document relied upon by Habil is a "load confirmation" form between M2 Logistics and Habil.  (Doc. 54-3, pp. 2–3.)  However, this form does not support Habil's contention that it notified its insurance carrier or M2 Logistics of the accident, nor does it contain any information about the location or condition of the cargo.

amended complaint sets forth one count under the Carmack Amendment, 49

U.S.C. § 14706, against M2 Logistics and Habil.  (Doc. 13.)  M2 Logistics

answered the amended complaint and pled a crossclaim against Habil on August

10, 2018.  (Doc. 17.)  On October 1, 2018, Pets Global requested that the Clerk of

Court enter default against Habil, and default was entered on October 11, 2018.

(Doc. 30.)  On October 31, 2018, Habil filed a motion to set aside the entry of

default.  (Doc. 35.)  Once ripe, the court granted Habil's motion and set aside the

entry of default.  (Docs. 43, 44.)  On April 12, 2019, Habil answered the amended

complaint as well as M2 Logistics' crossclaim.  (Docs. 45, 46.)

On September 10, 2019, Pets Global moved for leave to file a motion for

summary judgment, which the court granted on October 2, 2019.  (Docs. 47, 48.)

The instant motion for summary judgment was filed by Pets Global on October 2,

2019, along with a statement of facts and brief in support.  (Docs. 49, 50, 51.)

Habil opposed the motion on October 23, 2019, and Pets Global filed a timely

reply brief on November 6, 2019.  (Docs. 52, 53, 54, 55.)  Thereafter, this case was

reassigned to the undersigned on November 26, 2019.  On September 28, 2020,

after discovering that an exhibit was missing from Pets Global's motion for

summary judgment, the court ordered the parties to confer and, if in agreement,

that Pets Global file the missing exhibit.  (Doc. 56.)  The parties agreed and the

exhibit was filed on September 30, 2020.  (Doc. 57.)

**JURISDICTION**

This court has original jurisdiction over this case under 28 U.S.C. § 1337(a), which provides the district courts of the United States with jurisdiction over actions arising under the Carmack Amendment, 49 U.S.C. § 14706.  Furthermore, venue is proper under 28 U.S.C. § 1391 and 49 U.S.C. § 14706(d) because a substantial part of the events giving rise to the asserted claims occurred within this District.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment.  Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable

inferences in favor of the same.  *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *See Celotex*, 477 U.S. at 324.  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).  The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  *Celotex*, 477 U.S. at 322–23.  "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## DISCUSSION

The Carmack Amendment, now codified at 49 U.S.C. § 14706, was

established to create a uniform federal standard governing a railroad carrier's

liability for "'loss, damage, or injury' to goods while in interstate transit." *AMG*

*Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 98 (3d Cir. 2020)

(citation omitted).  In expanding and modernizing the Carmack Amendment over

the past century to apply to motor carriers, a shipper may now bring suit in federal

court against any carrier that transports its cargo, with or without a bill of lading.

49 U.S.C. § 14706(a), (d).  To establish a prima facie case under the Carmack

Amendment, a shipper must establish: "(i) that the initial carrier received the cargo

in good condition; (ii) that the cargo was lost or damaged; and (iii) the amount of

actual loss or damages." *AMG Res. Corp.*, 796 F. App'x at 98 (citing *Mo. Pac.*

*R.R. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)).

Here, while Habil objects to the assertion that the cargo was in good

condition when it was received for transport, Habil points to no evidence to

establish the contrary.  Further, the bill of lading does not note any damage to the

cargo as required by the bill of lading language.  A bill of lading reciting a

shipment's contents and stating that the goods were in good condition when

received by the carrier can be sufficient to satisfy the first element of the Carmack

Amendment's prima facie case.  *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250

7

F.3d 218, 225 (3d Cir. 2001).  Because Habil has failed to present any evidence to establish that any material dispute exists as to the condition of the goods when received for transport, other than to state its disagreement in conclusory fashion, the court finds that the first prong of Pets Global's prima facie case is established.

As to the second prong of the prima facie case, Habil argues that it "did everything within its power to complete the shipment and mitigate the loss to [Pets Global]."  (Doc. 52, p. 7.)  However, Habil ignores the legal reality that for the purpose of a establishing a prima facie case, "non-delivery of a shipment establishes a prima facie case of carrier liability."  *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, No. 00-5590, 2001 WL 1003052, at *2 (E.D. Pa. Aug. 29, 2001) (quoting *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1263 (8th Cir. 1984)), *aff'd*, 318 F.3d 458 (3d Cir. 2003).  The parties do not dispute that the cargo was not delivered to Pet Food Experts and, for the purpose of a prima facie case, it is irrelevant that Habil attempted to complete the shipment and mitigate the loss.  Thus, Pets Global has met the second prong of the prima facie case.

Lastly, for the third prong of the prima facie case, Pets Global submits that Pet Food Experts never paid the $56,106.02 invoice for the cargo as it was never delivered.  Habil admits this fact, but argues that there is "a disputed issue of material fact as to the actual loss suffered by [Pets Global] and [Pets Global's]

failure to mitigate its purported loss." (Doc. 53, ¶ 12; Doc. 52, p. 9.) The law is clear that the "measure of actual damages is the contract price," i.e. the $56,106.02. *Paper Magic Grp., Inc.*, 2001 WL 1003052 at \*4. Habil relies on the argument that "a shipper/consigner is ordinarily under a duty to mitigate its loss." *Paper Magic Grp., Inc.*, 318 F.3d at 462–63 (citations omitted). (*See also* Doc. 52, p. 8–9.) However, Habil misses the mark because the duty to mitigate damages, to the extent it may apply, has no bearing on whether Pets Global has proven a prima facie case. Rather, once Pets Global establishes a prima facie case, the burden shifts to Habil "to show that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Schneider Nat'l Carriers, Inc.*, No. 15-1401, 2018 WL 6573471, at \*4 (D.N.J. Sept. 25, 2018) (quoting *Mo. Pac. R. Co.*, 377 U.S. at 138). Accordingly, Pets Global has proven the third prong of a prima facie case.

Because Pets Global has proven a prima facie case, Habil is liable under the Carmack Amendment unless it can show that it was not negligent or that "the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Nat'l Union Fire Ins. Co. of Pittsburgh*, 2018 WL 6573471 at \*4 (quoting *Mo. Pac. R. Co.*, 377 U.S. at 138). Habil does not provide the court with any

evidence to rebut Pets Global's claim.  Rather, Habil argues that the accident was

not due to its driver's negligence, it did everything it could to attempt to deliver the

cargo, and Pets Global should have mitigated its loss.  (Doc. 52, pp. 7–10.)

Contrary to Habil's assertion, the police crash report provides that there

were no adverse weather conditions, only Habil's tractor trailer was involved in the

accident, and the accident was caused by Habil's driver driving too fast for the

conditions.  (Doc. 55-1, p. 1–2, 5.)  Additionally, Habil does not provide any

evidence regarding the shipper's, i.e. Pets Global, duty to mitigate its damages.  As

stated, it is Habil's burden to rebut Pets Global's claim, but other than statements

of disagreement, Habil has not provided evidence showing it was not negligent for

the accident, nor any information regarding Pets Global's lack of mitigation.

Habil also argues that there is a question of fact regarding whether Habil is

solely liable to Pets Global.  (Doc. 52, p. 7.)  Specifically, Habil asserts that M2

Logistics is also responsible for the damages to Pets Global because M2 Logistics

issued the bill of lading and contracted with Habil to transport the cargo.  (*Id.*)

According to Habil, following the accident, M2 Logistics took no action to

facilitate the delivery of the cargo.  (*Id.* at 8.)  Ultimately, Habil argues that M2

Logistics should also be held liable for Pets Global's claim, thus, there is a

disputed issue of material fact with respect to Habil's liability.  (*Id.*)  Again, Habil

has the burden of proving any set-off as an affirmative defense.  *See Alexious v.*

10

*Mashos*, No. 08-5491, 2009 WL 5092810, at *4 (E.D. Pa. Dec. 17, 2009).  The

conjecture and assumptions put forth by Habil are again insufficient to meet this

burden.  Accordingly, because Habil has not provided any evidence of a defense as

required by the burden shifting framework of the Carmack Amendment, judgment

will be granted in Pets Global's favor.

As to amount of damages, Pets Global asks the court to award the actual

damages suffered of $56,106.02, court costs of an undisclosed amount, and

prejudgment interest of six percent per annum from January 13, 2018, the date Pet

Food Experts was required to pay Pets Global, through the date of judgment, which

is within the court's discretion.  *See Paper Magic Grp., Inc.*, 2001 WL 1003052 at

*5 (citations omitted) (awarding prejudgment interest from the date plaintiff would

have had use of the money through the date of judgment).  The Third Circuit has

approved awarding prejudgment interest at this rate.  *See Paper Magic Grp., Inc.*,

318 F.3d at 465 (affirming the prejudgment interest of six percent annum from the

date the funds would have been available to plaintiff through the date of

judgment).  It should be noted that Habil does not object to or discuss the

prejudgment interest request of Pets Global.  Thus, the court will award Pets

Global prejudgment interest from January 13, 2018, through October 30, 2020, the

date judgment is entered against Habil.  Prejudgment interest at six percent per

annum on $56,106.02 from January 13, 2018 through October 30, 2020 totals

$9,425.81.  Thus, the total amount of damages that will be awarded to Pets Global is $65,531.83.  Regarding court costs, Pets Global may file a Bill of Costs in accordance with the local rules.

### CONCLUSION

For the reasons stated herein, the court will grant Pets Global's motion for summary judgment.  An appropriate order will issue.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: October 30, 2020